IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

STEPHANIE QUANTRANETTE BROWLEY            PLAINTIFF

v.            CIVIL ACTION NO.: 1:25-cv-27-JMV

COMMISSIONER OF SOCIAL SECURITY            DEFENDANT

## ORDER AFFIRMING ALJ'S DECISION

On September 16, 2021, Plaintiff filed an application for supplemental security income, alleging disability beginning September 24, 2019. The application was denied initially on January 6, 2022, and upon reconsideration on February 13, 2024. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and on July 24, 2024, the ALJ held a hearing. On August 19, 2024, the ALJ issued an unfavorable decision.

Subsequently, Plaintiff requested review from the Appeals Council. On January 2, 2025, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner of Social Security. For the reasons that follow, the undersigned finds that the ALJ's decision shall be AFFIRMED.

**The Case Below:**

Plaintiff was a younger individual at her alleged onset date and during all relevant times. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of September 16, 2021. Further, there is no past relevant work in this case and no transferable skills. At step two, the ALJ found Plaintiff to have the following severe impairments: COPD, asthma, fibromyalgia, PTSD, OCD, depression, personality disorder, anxiety, and substance abuse disorder. (TR 19). The Plaintiff's reported migraines and abdominal issues were found to cause no more than minimal limitations and were listed as nonsevere impairments.

1

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. The ALJ further noted that "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied." (TR 20).

The ALJ then assigned Plaintiff with the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except:

> she can occasionally climb stairs and ramps. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently reach. She can frequently grasp, handle, finger, and feel. She must avoid concentrated exposure to dust, odors, gases, fumes, poorly ventilated areas, and other pulmonary irritants. She must avoid concentrated exposure to unprotected heights and hazardous moving machinery. She is able to perform routine and repetitive tasks. She can understand, remember, and carry out simple instructions. She can sustain concentration, persistence, and pace for two hour periods of time. She can make simple work-related decisions. She can occasionally interact with coworkers and supervisors. She can never interact with the general public. She can adapt to infrequent changes in the workplace. She cannot work at a specific piece or production rate pace.

(TR 31).

In assigning Plaintiff with this RFC, the ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (TR 21). The ALJ also stated that he considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 416.920c.

> The claimant testified as follows:
>
> that she is currently on medications for her psychological issues. She has not worked in the last 5 years. She finished the 9th grade and got a GED. She receives treatment for depression and anxiety. She said she is taking medication for panic attacks. Her panic attacks usually last 10 to 15 minutes. She said it sometimes takes the day to recover. She does not go out too much and she sends her son to the store.

> She feels like she is going to die when she has a panic attack. She cannot control when they are going to happen. She reported having 3 panic attacks last week. They have to increase her medication for panic attacks. She said being around people is a problem for her and contributes to her anxiety. She feels like she is being looked at all the time. She isolates and will sleep a lot at times. She said her mind races. She testified she has flashbacks. She has OCD and will clean things over and over. She is having difficulty with urinating and her abdomen. She has had 14 surgeries for her abdomen. She has problems with frequently urinating and will go maybe 3 to 4 times an hour. She said her pain interferes with her concentration. She has problems with her left shoulder and neck. She has problems with both hips and she is trying to get an MRI. She can stand for 5 to 10 minutes. She can sit in a chair for 20 minutes before needing to get up. She cannot lift over 10 pounds without having pain. She has asthma and COPD and uses 2 inhalers. She could not walk a city block without pain. She lays down 4 to 5 times a day. She cannot bend, stoop, or squat like a normal person. She said she has to take showers.

(TR 22).

After careful consideration of the evidence, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms was not entirely consistent with the medical evidence and other evidence in the record. (TR 22).

The relevant medical evidence is thoroughly detailed in the transcript and the ALJ's opinion; herein, the undersigned will only regurgitate that evidence that directly relates to the Plaintiff's two assignments of error on appeal. A Pulmonary Function Test from April 2018, prior to the alleged onset date, shows minimal obstructive lung deficit and the ALJ noted that it does not meet a listing (C3F). The records discussed related to Dr. Charles Ozborn, and his opinions within the medical source statement, were as follows:

- On February 22, 2021, the claimant followed up with Dr. Charles Ozborn and reported anxiety and shortness of breath. She reported having no problems with her daily medications (C12F/5).

- On April 15, 2021, the claimant returned to Dr. Ozborn and reported toe pain and an infection. She was assessed with osteoarthritis, anxiety, and depression (C12F/7-8).

- On August 2, 2021, the claimant returned to Dr. Ozborn for anxiety and depression and she needed medication refills. She reported being compliant with her regular medications and said she had no problems with her daily medications. She had no shortness of breath or chest pain. A physical exam adduced negative findings. She was positive for anxiety and depression (C12F/10).

- On December 12, 2021, she returned to Dr. Ozborn for anxiety and depression and she needed medication refills. She had some muscle spasms of the back (C12F/14-16).

- On August 28, 2022, Dr. Charles Ozborn, a treating physician, submitted a medical source statement (C6F) consistent with a substantially less than a sedentary level. He determined the claimant can sit for less than two hours in an eight hour workday and stand/walk for less than two hours in an eight hour workday. She would need to elevate her legs with prolonged sitting. She can never lift less than 10 pounds. She can never perform any postural activities. She has significant limitations in doing repetitive reaching, handling, or fingering. She would likely miss about four or more days of work per month as a result of medical treatment or her impairments. The undersigned considered the assessment and finds it unpersuasive as it is inconsistent with his own treatment record as well as the totality of the medical record. For example, Dr. Ozborn essentially determined the claimant cannot lift anything. This is clearly inconsistent her doings such activities like cleaning constantly.

- On August 28, 2022, Charles Ozborn, a treating physician, submitted a medical source statement (C15F) noting the claimant is diagnosed with asthma, COPD, a bipolar disorder,

4

and chronic pain due to her pelvis and bladder mesh repair. He determined the claimant would be off task for 25% of a normal workday due to her impairments. He further determined the claimant would miss more than four days per month as a result of impairments or treatment. The undersigned finds Dr. Ozborn's opinion is unpersuasive as it is not consistent with his own treatment record as noted in the decision, as well as the totality of the medical record.

The records discussed as relevant to Dr. Khawaja are as follows:

- On August 23, 2022, the claimant returned to Dr. Khawaja for medications for severe anxiety, severe OCD, and anxiety since she was young. She has phobia and OCD and has taken medications in the past. She has flashbacks of past abuse and trauma and said she was raped a few years ago. She has a history of treatment for years but lost treatment and was struggling to get back on medications. She lives with a friend. On mental status, she was cooperative. Her speech was rambling. Her concentration and memory were intact. Her judgment and insight were good. She was diagnosed with chronic PTSD, OCD, rule out schizoaffective disorder bipolar type vs. bipolar disorder most recent mixed with psychotic features, and a substance use disorder, moderate to severe (C8F/4).
- Therapy notes from Region 7 in November 2022, reflect the claimant had an unremarkable mental exam (C8F/13).
- On January 10, 2023, the claimant presented to Dr. A. Khawaja at Region 7 and notes reflect she did well on medications but she ran out. She takes Ativan and Cymbalta. She is more balanced with no major issues. She has problems with OCD but it is getting better. On mental status, her affect was appropriate and well-modulated. Her thought process was logical and goal directed. She was oriented X4. Her concentration and memory were intact

and her judgment and insight were good. She was diagnosed with chronic PTSD, OCD, and a major depressive disorder with psychotic features (C8F/2).

- On April 25, 2023, she reported doing well to Dr. Khawaja and she was noted to be doing well with handling things. She was compliant with her medications and had no side effects. She sleeps and eats well. She has some depression but is overall stable. On exam, her affect and mood were full and broad. Her thought process was logical and goal directed. Her judgement and insight were good. She admitted to occasional auditory hallucinations but no delusional thinking (C8F/3).

- On July 3, 2024, Dr. Khawaja submitted a treating source statement (C20F) indicating the claimant has poor to none abilities in almost all areas of mental functioning. He also determined the claimant has poor abilities regarding activities of daily living. The undersigned finds the assessment is not persuasive because it is not supported or consistent with the treatment records. For example, the claimant told Dr. Ghosal that her typical daily activities consist of cooking, using the Internet, and driving (C11F). She reported to Dr. Zakaras that she cleans the toilets and folds clothes. She also watches television (C10F). Dr. Khawaja also last saw the claimant in April 2023, 15 months prior to issuing his MSS.

Based upon the evidence, the ALJ found that Plaintiff had the above RFC, which the ALJ found to be supported by the record evidence viewed as a whole. More specifically, the ALJ found:

> On April 25, 2023, the claimant reported doing well to Dr. Khawaja and she was noted to be doing well with handling things. She was compliant with her medications and had no side effects. She has some depression but was overall stable (C8F/3). Dr. Zakaras concluded the claimant seems capable of performing simple, routine, repetitive tasks and seems capable of relating to others and interacting with others (C10F). Dr. Ghosal's MSS notes the claimant has no limitations with sitting but she has mild limitations with standing (C11F). She has mild limitations with walking. He further determined she can occasionally bend, stoop, crouch, and squat. Due to left shoulder pain, she can frequently reach, grasp, handle, finger and

> feel. The undersigned additionally notes the claimant had numerous mental status exams showing generally negative findings.

(TR 27).

At step four, the ALJ found that Plaintiff had no past relevant work and no transferable skills, but she has a G.E.D. At step five, the ALJ obtained VE testimony identifying unskilled occupations that could be performed by an individual with the same age, education, and the specified functional limitations: yarn sorter, DOT#689.687-086, unskilled work (SVP-2) performed at a light exertional level; garment sorter, DOT#222.687-014, unskilled work (SVP-2) performed at a light exertional level, with 96,000 jobs in the national economy; and, as a garment bagger, DOT#920.687-018, unskilled work (SVP-2) performed at a light exertional level, with 73,000 jobs in the national economy. Therefore, the ALJ found that Plaintiff was not disabled since September 16, 2021, the date the application was filed.

**Issues on Appeal:**

Plaintiff presents two issues on appeal: 1) The ALJ erred in his analysis of the medical opinions of Dr. Ozborn and Dr. Khawaja; and 2) the ALJ erred by failing to properly consider the side effects of Plaintiff's medications.

**Standard of Review:**

It is long established that this Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained:

7

> The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Law and Analysis**

**Issue 1: Did the ALJ err in his analysis of the medical opinions of Dr. Ozborn and Dr. Khawaja?**

Plaintiff urges the Court to find that the ALJ failed to appropriately consider the factors of supportability and consistency with regard to Dr. Ozborn and Dr. Khawaja. At the telephonic hearing before the undersigned on September 24, 2025, and in the briefing, Plaintiff specifically argues that the ALJ committed error by completely dismissing Dr. Ozborn's opinion solely because Plaintiff obsessively cleaned. Plaintiff argued that this minimized her OCD symptoms and that the ALJ incorrectly used a note in the record from her treatment notes to discount the record and her disability. Plaintiff argues that her severe pelvic pain and multiple surgeries were incorrectly discounted and that the ALJ did not fully appreciate the totality of the impairment and restrict the RFC appropriately.

8

The task of evaluating the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The Fifth Circuit has noted that "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Therefore, the ALJ is only required to provide enough discussion of the evidence to allow for "meaningful judicial review." *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The undersigned has also denied a request for remand where the Plaintiff alleged that the ALJ did not provide an explicit discussion of the facts of supportability and consistency, but it was evident from the totality of the ALJ's decision that he properly considered these factors. *Cox v. Comm'r of Soc. Sec.*, 2022 WL 834294, at *3-4 (N.D. Miss. 2022). Such is the case here, as detailed below.

At the administrative telephonic hearing, the ALJ noted that the medical source statement from Dr. Ozborn "is significantly inconsistent with a physical exam of Dr. Ghosal in November of 2023." (TR 77).

With regard to Dr. Ozborn, the physician source statement and assessment form dated August 28, 2022, is a "fill-in-the-bank" and "check-the-box" style form. (TR 34). Dr. Ozborn expected Plaintiff to be absent from work more than four days per month. (TR 34). Dr. Ozborn also completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form on that same date. (TR 35). Dr. Ozborn found that Plaintiff would need experience pain or other symptoms interfering with her ability to work "constantly" or 67% or more of the day. (TR 35). Page two of the second form is a "check-the-box" style form where he found that Plaintiff could sit and stand/walk less than two hours per day, never lift less than 10 pounds, and never twist, stoop, crouch, climb ladders, or climb stairs. (TR 35). Dr. Ozborn also checked the box providing that Plaintiff had significant limitations in her ability to do repetitive reaching, handling, or fingering and needed to elevate her legs with prolonged sitting. (TR 35).

Most of the relevant treatment notes from Dr. Ozborn's clinic are detailed supra on pages three through five of this opinion. However, there are two additional notes that bear mentioning. First, on October 19, 2019, the NP Cherryl Marie Avent at North Mississippi Tupelo Medical Clinic noted that Plaintiff had not had medications since February but was requesting refills on all medications. The NP noted that Plaintiff had "no recent visit with PCP (Dr. Ozborn)." (TR 479). Also, on December 20, 2021, visit notes with Dr. Ozborn provided "needs treatment for probably bipolar disorder, I have treated Stephanie intermittently over many years and will continue to try to help her but very difficult." Dr. Ozborn also reported that Plaintiff had "very angry and manic behavior." (TR 493). However, that singular record does not tip the scales to make the Court find reversible error on this issue as to Dr. Ozborn. Upon reviewing the evidence as a whole, it was not reversible error for the ALJ to find that Dr. Ozborn's own records do not support the limitations specified in Dr. Ozborn's forms.

As for Dr. Khawaja, the transcript reveals that he was Plaintiff's treating psychiatrist at Region Seven Community Counseling. (TR 82). The record from January 1, 2023, revealed that Plaintiff reports she "did well w/ meds but ran out." (TR 498). The record stated that Plaintiff has problems with OCD but it is getting better, she is more balanced and has no major issues. She sleeps well, eats well, and energy is good. The mental status examination was unremarkable. (TR 498). Plaintiff was encouraged not to increase dose of her medications, continue counseling, and return in four months. (TR 498). On April 25, 2023, Plaintiff reported doing well to Dr. Khawaja and she was noted to being doing well with handling things (Tr. 27, 446). Plaintiff was compliant with her medications and had no side effects (Tr. 27, 446). She had some depression (Tr. 446). In his opinion, the ALJ explained that Plaintiff had last seen Dr. Khawaja in April 2023, fifteen

months prior to Dr. Khawaja issuing his opinion, which also goes to the issue of supportability (Tr. 26).

This is not a situation where the only medical opinions in the record were from Dr. Ozborn and Dr. Khawaja. Instead, the ALJ noted in his decision that the November 2023 consultative examination performed by Dr. Raaj Ghosal, D.O., revealed that Plaintiff was able to lift and carry light objects (TR 26, 476). The ALJ also considered the August 22, 2023, consultative examination performed by Patsy Zakaras, Ph.D., and noted the mental status evaluation findings (TR 26, 467-468). The ALJ found that the prior administrative mental assessment was generally consistent with the evidence of record, and persuasive (TR 25, 126-130).

Further, the ALJ was within his discretion to find that the July 3, 2024, form completed by Dr. Khawaja was not persuasive because the form includes no explanation or basis for the limitations specified (Tr. 686-688). Thus, the undersigned cannot find that it was error for the ALJ to opine that Dr. Khawaja's form was not supported (TR 686-688).

Accordingly, the ALJ's persuasiveness analysis for both Dr. Ozborn and Dr. Khawaja was reasonable, within his discretion, and supported by substantial evidence. The undersigned does not find merit in Plaintiff's argument because while the ALJ may not have explicitly used the "magic words" of "supportability" and "consistency," he provided a reasoned explanation as to why he did not find Dr. Ozborn and Dr. Khawaja's opinions to be persuasive.

**Issue 2: Did the ALJ err by failing to properly consider the side effects of Plaintiff's medications?**

As to the second issue, Plaintiff argues that the ALJ failed to properly consider the side effects of Plaintiff's medications. Plaintiff cites to the following portion of the ALJ's opinion that discussed potential side effects:

11

> There was a report to Dr. Ghosal that she frequently has to use the bathroom and she reported this at the hearing (C11F). There was a report of severe fatigue and drowsiness to Dr. Ghosal, and at the hearing, but the records generally do not indicate she has side effects from medication (C11F).

(TR 25). Based upon this statement in the ALJ's opinion, Plaintiff argues that "the ALJ's failure to properly consider the side effects of claimant's medications is inconsistent with prior Court's rulings, creates an RFC that was not created based on substantial evidence, and also creates a decision that was formulated with the ALJ applying improper legal standards." Pl.'s Brief [Doc. 16] at 11. Plaintiff cites to *Crowley v. Apfel*, wherein the United States Court of Appeals for the Fifth Circuit overturned a decision denying benefits for failure to consider the side effects of medication despite the plaintiff's testimony that his medications caused nausea, dizziness, sore throats, blurred vision, tremors and diminished coherence. 197 F.3d 194 (5th Cir. 1999).

Dr. Ozborn's records did not reveal that Plaintiff complained of issues with side effects from her daily medications when she was seeing him for medication refills. There was an April 1, 2020, record from a visit with Dr. Ozborn for a physical exam. Then, Dr. Ozborn's progress notes from a February 22, 2021, telehealth visit; an April 15, 2021, telehealth visit; an August 2, 2021, visit; and a December 20, 2021, telehealth visit, provide that Plaintiff reported "no problems" with her "regular daily meds." (TR 483, 485, 488, 492).

Plaintiff is correct that the ALJ should consider the effects of the complaints, even if the plaintiff fails to specifically label them as medication side effects. *See Brown v. Barnhart,* 285 F.Supp.2d 919 (S.D. Tex. 2003). However, in this case, the undersigned finds that the ALJ has met that requirement through his thorough discussion of the Plaintiff's testimony regarding her symptoms on page 22 of the transcript and his reliance upon the CE from Dr. Ghosal on page 25.

Ultimately, as to the second issue, the Court finds that there was sufficient consideration of the side effects of Plaintiff's medications.

**Conclusion:**

In conclusion, I find that the ALJ's opinion is supported by substantial evidence. Accordingly, the ALJ's decision shall be and is hereby AFFIRMED.

**SO ORDERED** this, the 26th day of September, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**